UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-81648-Civ-MATTHEWMAN

IN THE MATTER OF THE COMPLAINT OF
TYLER CHAVES, FOR EXONERATION FROM
OR LIMITATION OF LIABILITY AS OWNERS
OF A 23-FOOT 2005 PRO-LINE BOAT, HULL ID
NO. PLCSP054H405

_____/

FILED BY ___SW___ D.C.
Feb 9, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## ORDER GRANTING IN PART AND DENYING IN PART GMB'S MOTION FOR SUMMARY JUDGMENT [DE 52]

**THIS CAUSE** is before the Court upon Cross-Defendant[1] Get My Boat, Inc.'s ("GMB"), Motion for Summary Judgment Against Donald S. Partridge, as Administrator of the Estate of Lindsey Partridge ("Motion") [DE 52]. Claimant, Donald S. Partridge as Administrator of the Lindsey Partridge ("Claimant" or "Claimant Partridge" or "Partridge"), has filed a response to the Motion [DE 72], and GMB has filed a reply [DE 85]. Claimant has also filed a Notice of Supplemental Authority Regarding Get My Boat's Motion for Summary Judgment [DE 98]. Additionally, GMB has filed its Statement of Material Facts [DE 54], Claimant has filed a Response to GMB's Statement of Material Facts and Additional Facts [DE 71], and Claimant has conventionally filed a CD containing a video taken of the GMB account creation procedure with Court permission [DE 84; 91]. The Court heard oral argument on the Motion at a hearing on January 25, 2024. The matter is now ripe for review, and the Court has carefully considered the

---

[1] In the context of this specific Motion, GMB is a Cross-Defendant, so the Court will refer to it as a Cross-Defendant in this Order to ensure clarity. While the Court understands that GMB is also a Claimant in this case, GMB will not be referred to as a Claimant in this Order so as to avoid any confusion with Claimant Partridge.

1

filings and attachments thereto, the arguments of the parties, and the applicable law, as well as the entire docket in this case.

## I.  BACKGROUND

On October 27, 2022, Petitioner Tyler Chaves ("Petitioner" or "Chaves" or "Petitioner Chaves") filed a Petition for Exoneration from or Limitation of Liability [DE 1]. He is the owner of a 2005 23' Pro-Line Vessel, bearing Hull Identification No. PLCSP054H405 and is seeking exoneration from or limitation of liability, for all claims arising out of an incident that occurred on or about March 13, 2022, on the navigable waters of the United States near Boca Raton, Florida. *Id.* at 1.

Lindsey Faith Partridge rented the boat which was owned by Petitioner Chaves through an online web site GetMyBoat.com. [DE 8 at 8]. Petitioner Chaves, the owner of the boat, personally delivered the boat to her and launched the boat off his trailer for her and her passenger Jacob Smith. *Id.* Lindsey Partridge was operating the rented boat in the Atlantic Ocean just off the Boca Raton inlet where she encountered heavy seas and rough weather. *Id.* The heavy seas caused the rented boat to roll which caused her to be ejected from the boat and thrown into the water. *Id.* When she was ejected from the boat into the water, she was immediately struck by the engine's propeller which caused her fatal injuries and untimely death. *Id.*

On January 5, 2023, Claimant Partridge filed an Answer to Petitioner Chaves' Limitation Complaint, Affirmative Defenses, Claim, and Demand for Jury Trial [DE 7; 8]. On January 11, 2023, GMB filed an Answer and Affirmative Defenses to Chaves' Petition for Exoneration from or Limitation of Liability and Claim Against Petitioner [DE 9]. Thereafter, Claimant Partridge filed a Crossclaim against GMB [DE 10]. GMB, in turn, filed an Answer and Affirmative Defenses to the Crossclaim [DE 18].

GMB is currently moving for summary judgment in this admiralty action in its favor and against Claimant Partridge on the Crossclaim, as well as on the issue of Claimant Partridge's contractual duty to indemnify and defend GMB. [DE 52].

## II.   MOTION, RESPONSE, AND REPLY

### A. Motion

In its Motion, GMB explains that the "issue at hand is purely a question of law, addressing, as a matter of first impression, whether, a website can be liable for a vessel owner's acts or omissions as a livery statutorily or under general maritime law." [DE 52 at 2]. According to GMB, the Florida Livery Statute (section 327.54, Florida Statutes) does not create any relationship between GMB, and Claimant Partridge since Petitioner Chaves' vessel is not the property of GMB to lease, rent or charter; GMB was not in a position to provide a seaworthy vessel; and Petitioner Chaves is not an agent or employee of GMB. *Id.* at 13. GMB further argues that GMB did not publish the charter listing and cannot be held to be a livery on the basis of its publication. *Id.* at 13–17. It contends that Claimant Partridge is bound by the Terms of Use Agreement to which Lindsey Partridge agreed upon the creation of an account with GMB. *Id.* at 17–18. According to GMB, Claimant Partridge is contractually obligated to indemnify and defend GMB per the terms of the contract. *Id.* at 18–21. It asserts that, per the terms of the contract, if GMB is found liable, Claimant must also pay all amounts due over $100.00. *Id.* at 21–22.

### B. Response

As an initial matter, Claimant Partridge contends that this case is governed by general maritime law of the United States and that California law (rather than Florida law) applies to any analysis of the contract entered into between GMB and Lindsey Partridge. [DE 72 at 3]. Next, Claimant argues that GMB is a livery under Florida law because the rental would not have occurred

without GMB; GMB profits by renting livery boats in Florida and thus should not be able to avoid the statutory safety requirements for liveries; the statute itself does not require ownership; and GMB would clearly qualify as a livery under the changes to the relevant statute. *Id.* at 3–8. With regard to the Terms of Use Agreement, Claimant contends that GMB's waiver is not enforceable as it is not valid under California clickwrap law; the language of the contract is ambiguous and contains conflicting language; waivers which exempt a party from liability for violation of a safety statute are void under general maritime law; and both Florida and California law regarding negligence per se state that violation of a safety statute invalidates a waiver or release of liability. *Id.* at 9–16. Claimant also argues that the Communications Decency Act (47 U.S.C. § 230) does not apply to GMB in this case as free speech is not an issue in this case and Claimant is not treating GMB as a publisher because of the listing on the website alone. *Id.* at 17–19.

### C. Reply

In reply, GMB contends that Claimant Partridge "offers only baseless conclusory statements" to support his argument that GMB was a livery at the time of the incident. [DE 85 at 2]. GMB again argues that Claimant Partridge is seeking to "hold GMB liable as a publisher of content contrary to the Communications Decency Act, 47 U.S.C. § 230" and is seeking to "hold GMB liable as a livery purely based on GMB's role as a website platform, and Chaves's publication of his livery vessel for charter on the GMB website." *Id.*

GMB also argues that "[t]he lease or charter of a livery vessel is exerting the right of disposition. Unlike Chaves, GMB has no ability to exert this right, so to allow the utilization of the vessel." *Id.* at 3. According to GMB, "Partridge relies on a baseless hypothetical to allege GMB could provide a seaworthy vessel, yet fails to deal with how GMB could be held responsible for the implied warranty of seaworthiness." *Id.* It further asserts that "GMB at no point accepts

4

consideration for the rental of the livery vessel owned by Chaves, rather facilitates payment for use of the website, which acts as a conduit alone. As such, GMB is not a livery." *Id.* at 4.

Next, GMB maintains that Florida law applies to the contractual agreement between GMB and Lindsey Partridge. *Id*. First, GMB explains that, "[l]ogically, if the law applied in the manner [Claimant] Partridge argues, there would be no claim against GMB under the Florida Livery Statute, nor would there be any relationship between GMB and Partridge." *Id.* Second, engaging in a choice of law analysis, GMB points out that the incident occurred in Florida, the vessel is titled in Florida, and Claimant has brought his claim against GMB under a Florida statute. *Id.* Thus, according to GMB, "the acceptance of the GMB Terms of Use and subsequent application of the terms shall reasonably be governed by Florida Law." *Id.* Third, GMB argues that, "because of GMB's business, it would be unreasonable to expect that Partridge, upon entering into the agreement, would have reason to believe the contract would be construed under the laws California." *Id.* at 4–5. Fourth, it contends that "GMB is not required to enforce a choice of law provision in the contractual agreement, and has elected not to do so in the pursuit of this matter. GMB may waive a provision, such as the choice of law clause, without impact to the enforcement of any other provision." *Id.* at 5. Finally, GMB contends that the Terms of Use are enforceable against Claimant Partridge and that GMB is not a livery and therefore could not have violated the Florida safety statute. *Id.* at 6.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Id.* at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

## IV. DISCUSSION AND ANALYSIS

### A. Whether the Communications Decency Act Makes GMB Immune from Liability

Section 230 of the Communications Decency Act (CDA) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). There are three elements to a claim of immunity under Section 230(c). The party must show that: "(1) [it] 'is a provider . . . of an interactive computer service, (2) the claim is based on information provided by another information content provider, and (3) the claim would treat the [party] as the publisher or speaker of that information.'" *Doe on Behalf of Doe v. Grindr, LLC*, No. 5:23-CV-193-JA-PRL, 2023 WL 7053471 (M.D. Fla. Oct. 26, 2023) (quoting *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018), *aff'd,* 765 F. App'x 586 (2d Cir. 2019), and *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (*quoting Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 19 (1st Cir. 2016)). "Merely providing the forum where harmful conduct took place cannot . . . serve to impose liability onto [a provider]." *M.H. v. Omegle.com, LLC*, Case No. 8:21-cv-814-VMC-TGW, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022) (citing *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014)). Generally speaking, section 230 "precludes courts from entertaining claims that would place a computer service provider in a publisher's role." *McCall v. Zotos*, No.

7

22-11725, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) (citing *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 2008)).

Claimant Partridge does not seem to take issue with the fact that GMB is an "interactive computer service," meaning that GMB "provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2)." *Albert v. Tinder, Inc.*, No. 22-60496-CIV, 2022 WL 18776124, at *10 (S.D. Fla. Aug. 5, 2022). And, "[c]ourts typically have held that website exchange systems and online message boards are interactive computer services." *McCall*, 2023 WL 3946827, at *2. Here is it undisputed that GMB is "an online venue on which Vessel owners . . . post their vessels for rental, lease, or charter by use of the website." [GMB's Statement of Material Facts ("GMB's SMF"), DE 54 ¶ 1]. Thus, the Court finds that the first element of CDA immunity is met.

It is also clear that the claims asserted against GMB are based on information posted by Petitioner Chaves and not GMB. It is undisputed that Petitioner "was a member of GMB, and utilized the venue to offer his vessel for lease, rental, or charter." [GMB's SMF ¶ 10]. Thus, the Court finds that the second element of CDA immunity is met.

Claimant Partridge seems to argue that the third element—that the claims asserted against GMB treat GMB as the publisher or speaker of the information—has not been met. At the hearing on GMB's Motion, GMB's counsel explained its website as follows. GMB serves as a platform that introduces boat owners to renters. Owners can access the site and upload photos and descriptions of their boats, as well as the rate they are charging for use of their boats. The website has a protected area where the boat owner and the renter can chat (through an application called Zendesk). The rates are set by the boat owners. Once the owner and renter agree on a price, the renter can process his or her payment through the website; there is a secure payment page where

8

credit card information is entered. The funds initially go to GMB. After the boating trip is complete, the money processes through the website, and the owner gets a rental fee less GMB's service (or subscription) fee, which is 7.5% of the total price. This recitation of how GMB operates is supported by the deposition testimony of Ryan Pott, who is closely involved with GMB through his employment at YANMAR America Corporation.[2] [Pott Depo., DE 52-120 at 17–19, 34, 36–42, 45–46, 53–54].[3] The recitation is also supported by the Terms of Use Agreement between GMB and Lindsey Partridge. [Terms of Use, DE 52-13 at 2–3, 6–7, 12–14].

In his response to GMB's Motion, Claimant Partridge asserts that he has "not alleged that there was some form of speech or published information in the specific boat listing that was the sole cause of the loss. Claimant alleged instead that through its participation in the rental that GMB is liable for damages as a livery." [DE 72 at 19]. He explains that GMB "did more than sit back and allow people to post or exchange information on its website." *Id.* at 18. More specifically, Claimant asserts that GMB

> enters into membership agreements with boat owners; wrote a contract for membership between boat owners and renters and between itself and members/renters; GMB is the only party in the transaction that provides the contract for rental; and has its own secure payment system wherein it collects money for the rental and then disperses a portion of it to the member after the rental. *See* Partridge Stmt. of Material Facts. Get My Boat acts as an arbitrator when its members and renters have a disagreement. *Id.* And as is evident in particular from this case, Get My Boat uses its authority to hold funds from members while it conducts investigations into certain claims.

*Id.*

---

[2] GMB is a wholly owned subsidiary of YANMAR. [Pott Depo. at 7: 23–25].
[3] It should be noted that Claimant Partridge himself relies on this same deposition as proof that GMB did not merely facilitate the connection between owner and charterer. *See* Claimant's Response to GMB's Statement of Material Facts ("Clmt.'s SMF"), DE 71 at 2.

9

It is clear to the Court that GMB does, in fact, meet the third element required to establish immunity under the CDA despite Claimant Partridge's arguments to the contrary. Case law has established that "[a] website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1364 (S.D. Fla. 2022) (applying the CDA in a case in a which terms of use contract had been entered into by the plaintiff) (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008)). Further, "[c]ourts have granted CDA protection to websites that process payments and transactions in connection with third-party listings, including Airbnb." *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1106 (C.D. Cal. 2017). In this case, GMB had no right of disposition of Petitioner Chaves' vessel. It had no right to do anything material with the vessel other than to allow Chaves to post the vessel for rent on GMB's website. And GMB does not receive consideration for rental of the vessel; rather, it receives a modest service or subscription fee. In effect, GMB acts as a conduit, providing the tools to, in this case, put Chaves in touch with Ms. Partridge regarding the rental of Chaves' vessel.

Finally, Claimant Partridge asserts that "Get My Boat's attempt to couch its business dealings through its website in the same group of online community type websites that seek protection from third party's obscene speech is a gross mis-use of the statute." [DE 72 at 17–18]. However, upon review of the large number of cases in GMB's papers and upon the Court's own independent legal research, it is very clear that the CDA is being applied by many courts outside of the obscene speech context. And the Eleventh Circuit has explained that "[t]he purpose of this statutory immunity is to 'maintain the robust nature of Internet communication' and to avoid the 'obvious chilling effect' that would result from the specter of tort liability on service providers for millions of postings by third parties." *Id.* (citing 47 U.S.C. § 230(b))." *McCall*, 2023 WL 3946827,

10

at *2. Under the facts of this case, placing liability upon GMB would clearly have a chilling effect upon service providers like GMB.

As noted above, it seems clear to the Court that GMB was merely a conduit in the vessel rental process between Petitioner Chaves and Lindsey Partridge. GMB is a service provider that runs a website which allows the prospective renter of a vessel to get in touch with the owner of the vessel. And the few ancillary services GMB provides do not serve to remove GMB from the protection of the CDA. To hold GMB liable under the facts of this case would clearly violate the provisions of the CDA.

In light of the foregoing, the Court finds that GMB is entitled to federal immunity under the CDA with regard to any cause of action that would make service providers liable for information originating with a third-party user of the service. Under the facts of this specific case, this would include Claimant Partridge's claims of negligence and negligence per se asserted against GMB in this admiralty action. Summary judgment is therefore granted in favor of GMB on this issue and on both counts of the crossclaim filed by Claimant Partridge.

### B.     Whether GMB Is a Livery under Florida Law

In addition to this Court's grant of summary judgment in favor of GMB as discussed above due to the application of the CDA, the Court will also grant summary judgment in favor of GMB due to the fact that GMB is not a livery under the 2021 Florida Livery Statute. The 2021 version of section 327.54, Florida Statutes, creates certain requirements for a "livery." However, the term "livery" is not specifically defined within the 2021 statute. Nonetheless, under the 2021 version of the Florida Statutes, 327.02 (24), a "livery vessel" is specifically defined as a "vessel leased, rented, or chartered to another for consideration."

The 2023 amended version of section 327.54, which was enacted after the fatal incident and facts underlying this case,[4] added a specific definition of "livery," as follows:

> "Livery" means a person who advertises and offers a livery vessel for use by another in exchange for any type of consideration when such person does not also provide the lessee or renter with a captain, a crew, or any type of staff or personnel to operate, oversee, maintain, or manage the vessel. The owner of a vessel who does not advertise his or her vessel for use by another for consideration and who loans or offers his or her vessel for use to another known to him or her either for consideration or without consideration is not a livery. A public or private school or postsecondary institution located within this state is not a livery. A vessel rented or leased by a livery is a livery vessel as defined in s. 327.02.

§ 327.54(c), Fla. Stat. (2023). While this amendment is interesting, the Court is nonetheless required to rely on the 2021 version of the statute and does so here.

The Court first notes that whether, under the facts of this case, the 2021 version of the Florida Livery Statute applies to a website such as GMB is an issue of first impression. Neither the parties, nor the Court, have found any cases which address a similar factual scenario. Thus, the Court is writing on a clean slate here.

Additionally, the Court notes that the issue of whether, under the facts of this case, the 2021 Florida Livery Statute applies to GMB does require a separate analysis as to whether the same statute applies to Petitioner Chaves. That is, under the facts of this case, merely because the 2021 Florida Livery Statute applies to Petitioner Chaves does not necessarily mean that the same statute applies to GMB. And in this regard, the Court finds that the application of the 2021 version of the Florida Livery Statute to GMB is readily distinguishable from its application to Petitioner Chaves, as discussed below.

---

[4] The incident underlying this lawsuit occurred on March 13, 2022. The version of the statute that was in effect at the time of the incident was in effect from July 1, 2021, to December 31, 2022. A new version of the statute went into effect on January 1, 2023. Any references by the parties to an amended 2022 version of the statute is incorrect and confusing.

12

Claimant Partridge makes the following arguments to support his contention that the 2021 version of the Florida Livery Statute applied to GMB. First, he argues that the rental would not have occurred without GMB. [DE 72 at 4–5]. This argument is without merit. The express language of the 2021 version of section 327.54, Florida Statutes, states throughout that liveries may not knowingly lease, hire, or rent vessels under certain conditions. GMB did not lease, hire, or rent Petitioner's vessel—nor did GMB have the authority or ability to lease, hire, or rent the vessel on behalf of Petitioner Chaves. GMB was merely a conduit website. Further, there is no evidence whatsoever that Petitioner Chaves is an agent or employee of GMB, and the Court finds on this record that he is not. Therefore, under the express language of the Florida Livery Statute, as it existed in 2021, GMB would not have been a livery, and, importantly, GMB could not have reasonably believed it was a livery and that the statute applied to it at the time of the facts underlying this case occurred.

Second, Claimant asserts that GMB profits by renting livery boats and, thus, should not be able to avoid the statutory safety requirements for liveries. [DE 72 at 5]. This argument is rejected. The Court notes that GMB did collect a relatively modest service or subscription fee, which consisted of a 7.5% portion of the total rental fee. But this fact does not turn a conduit website like GMB into a livery. Moreover, Claimant is essentially making a public policy and statutory intent argument that is based on Claimant's opinion and no actual legal authority. In actuality, GMB's argument is in opposition to the express language of the 2021 version of the statute.

Third, Claimant contends that ownership is not required in the statute, so GMB was a livery even if it did not own any vessels. [DE 72 at 6]. He further argues that the "fact that this vessel was a livery vessel, and GMB participated in the rental of the vessel should be enough to hold GMB to the legal requirements of a livery under the Florida statute as it was written in 2021." *Id.*

13

at 6. However, GMB's minimal participation in the rental of the vessel, primarily as a conduit website, is not enough to bring GMB within the 2021 version of the Florida Livery Statute. GMB simply provided a platform for Petitioner Chaves (the livery) to perform the tasks of advertising his boat rental, negotiating a rate, renting his own vessel, and earning a rental fee. While the rental fee was paid to GMB initially, GMB essentially held the rental fee in trust and then remitted it to Petitioner Chaves after deducting a modest service or subscription charge. GMB could not rent the vessel owned by Chaves on its own and Chaves was not an agent of GMB.

Moreover, this is not even a situation where the boat itself malfunctioned; instead, Lindsey Partridge's untimely death was due to a tragic boating accident where she was ejected from the vessel in rough weather and seas. It would be against all logic, given the express language of the 2021 version of the Florida Livery Statute, to find that GMB could have been responsible for (or could have believed itself to be responsible for) tasks such as ensuring that a boating safety placard was posted and ensuring that all pre-rental and pre-ride instructions were given by someone who had completed a boater safety course approved by the State of Florida. Yet, these are the types of duties that Claimant alleges were breached by GMB. [DE 10 at 3–6, 9–12].

Fourth, Claimant asserts that GMB would have fit within the definition of the word "livery" in the later version of the statute. [DE 72 at 6–8]. The Court acknowledges that the definition of livery in the amended 2023 Florida Livery Statute is quite broad. And, while the very broad definition of a livery under the 2023 version of the statute may arguably or conceivably apply to GMB under the facts of this case, that is not by any means a certainty. A strong argument could be made that even under the 2023 amended version of the Florida Livery Statute, it is Chaves, not GMB, who "advertises and offers" a livery vessel by utilizing GMB's website. That is because it is Chaves who places the advertisement on GMB's website. Further, GMB does not have the

authority to "offer" Chaves' vessel for rent and merely allows Chaves to utilize GMB's website so that Chaves can "offer" his vessel for rent. GMB is not the party renting the vessel; rather, it is Chaves who rents the vessel. More importantly, the issue of whether the amended 2023 version of the Florida Livery Statute would apply to GMB is not currently before the Court, and the amended "livery" definition that currently exists in the statute cannot be applied retroactively. It simply would not be fair to task GMB with anticipating any future quite broad definition of a "livery" back when the incident underlying this case occurred. The Court will not endeavor to address whether GMB might come under the definition of livery in a later version of the statute which simply does not apply to this case.[5]

In sum, the Court finds that GMB was not a livery under the 2021 Florida Livery Statute and was not required to abide by the statutory safety provisions found therein. Accordingly, the Court grants summary judgment in favor of GMB and against Claimant Partridge on this issue and on both counts of Partridge's crossclaim as well.

### C. <u>Whether the Contract Is Enforceable</u>

GMB argues that Claimant Partridge must indemnify, release, defend, and hold harmless GMB for any bodily injury resulting from the use of the website and the services pursuant to the Terms of Use Agreement entered into by Lindsey Partridge. [DE 52 at 19]. As an initial matter, since the Court has found that GMB is entitled to summary judgment against Claimant Partridge

---

[5] Even Claimant Partridge admits in his response that, "[u]nder the statute as written in 2022, it is evident that GMB would be considered a livery subject to the safety requirements of the statute. Claimant argues that this drafting is persuasive authority ripe for consideration of the issue as it is one of first impression, and there is no caselaw to analogize or compare the law as it was written in 2021." [DE 72 at 8]. In other words, Claimant refers to the later amended version of the statute (in reality, the 2023 version) as "persuasive authority" as to how the Court should interpret the 2021 statute, but Claimant Partridge does not argue that the later version of the statute actually retroactively applies under the facts of this case. And, of course, the later amended version of the statute does not apply retroactively to this case.

on both crossclaim counts related to GMB's alleged liability, the bulk of GMB's contractual arguments are now moot and the Court need not address them. The only remaining issue is whether Claimant Partridge is contractually required to pay the legal fees and costs incurred by GMB in this lawsuit.

In light of the fact that GMB has not expressly and clearly asserted a claim of indemnity against Claimant Partridge in any counterclaim or other legal claim on the docket, and in light of GMB's failure to clearly assert an affirmative defense of indemnity as against Partridge, a summary judgment motion on this discrete issue seems to be improper here. *See* Fed. R. Civ. P. 56 ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."). GMB had the opportunity to assert such claim and/or affirmative defense against Partridge when it filed its Answer and Affirmative Defenses to Claimant Partridge's Crossclaim [DE 18] but it did not do so. The Court therefore finds that GMB is not entitled to summary judgment on indemnification against Claimant Partridge. However, because Claimant Partridge did not raise this argument, and in an abundance of caution, the Court will analyze this issue under the summary judgment standard as well.

The parties agree that this is a "clickwrap agreement." Clickwrap agreements are "agreements [formed by] requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction.'" *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016) (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012)).

There is no need for the Court to determine whether Florida or California applies here because clickwrap agreements such as this one have been upheld pursuant to both Florida and California law. *See, e.g., Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1339 (S.D. Fla. 2022); *In*

*re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016). Here, it is undisputed that Lindsey Partridge had to click on "I Agree" to create an account with GMB. [Clmt.'s SMF ¶ 4]. However, Claimant Partridge argues that GMB "failed to provide 'reasonably conspicuous' notice of the terms by which it intended Lindsey Partridge to be bound," and GMB "also did not get unambiguous manifestation of Lindsey Partridge's assent, because she was not explicitly made aware that the act of clicking the 'Accept' button would constitute assent to the terms and conditions of the 'Terms of Use' hyperlink contents." [DE 72 at 10–11].

The Court disagrees. It is clear in this case that the screen on which Lindsey Partridge clicked "accept" had three hyperlinks to the "Privacy Policy," "Member Interface Agreement," and "Terms of Use." [DE 52-15]. The three hyperlinks were in a blue font that stood out from the other grey font on the page. *Id.* Additionally, there was a large blue "Accept" rectangular button. *Id.* Thus, the Terms of Use Agreement is a proper clickwrap contract, and the undisputed facts establish that Lindsey Partridge assented to its terms.

The only remaining argument of Claimant Partridge that the Court must consider—in light of the Court's above rulings[6]—is that the waiver in the Terms of Use Agreement is not valid because the language of the contract is ambiguous, contains conflicting language, and is not easily readable.

The relevant language of the Terms of Use Agreement provides:

**Release and Indemnification**
IN THE EVENT OF A DISPUTE BETWEEN A RENTER AND A MEMBER, MEMBER AND RENTER, JOINTLY AND SEVERALLY, HEREBY AGREE TO INDEMNIFY, RELEASE, DEFEND AND HOLD HARMLESS

---

[6] Specifically, the Court need not consider whether waivers which exempt a party from liability for violation of a safety statute are void under general maritime law since the Court is finding that GMB does not fall within the ambit of the 2021 Florida Livery Statute and is also entitled to immunity under the CDA. Similarly, the Court need not consider Claimant Partridge's argument that both Florida and California law regarding negligence per se hold that violation of a safety statute invalidates a waiver or release of liability.

> GETMYBOAT AND ITS DIRECTORS, OFFICERS, AGENTS AND EMPLOYEES (COLLECTIVELY, THE "GETMYBOAT PARTIES") FROM ANY CLAIMS, CAUSES OF ACTION, DEMANDS, RECOVERIES, LOSSES, DAMAGES (ACTUAL AND CONSEQUENTIAL), FINES, PENALTIES AND OTHER COSTS OR EXPENSES, OF ANY KIND OR NATURE, INCLUDING BUT NOT LIMITED TO REASONABLE LEGAL AND ACCOUNTING FEES (COLLECTIVELY, THE "CLAIMS"), KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH SUCH DISPUTES, INCLUDING, WITHOUT LIMITATION, DISPUTES ARISING OVER BREACH OF THIS AGREEMENT, BREACH OF ANY SEPARATE AGREEMENT OR TRANSACTION, AND/OR THE SUBSTITUTION OF RENTAL UNITS. FURTHER, MEMBER AND RENTER EACH HEREBY AGREE TO INDEMNIFY, RELEASE, DEFEND AND HOLD HARMLESS THE GETMYBOAT PARTIES FROM ANY CLAIMS BROUGHT AS A RESULT OF MEMBER AND/OR RENTER'S (1) BREACH OF THE TERMS, (2) VIOLATION OF ANY LAW OR THE RIGHTS OF A THIRD PARTY, AND (3) USE OF THIS WEBSITE AND THE SERVICES.

[DE 52-13, GMB Terms of Use at 3-4].

Utilizing California law, Claimant Partridge maintains that the Terms of Use Agreement is an adhesion contract and then describes various alleged conflicts and ambiguities in the language. [DE 72 at 12–14]. Claimant further maintains that "GMB's multiple, confusing, and contradictory attempts to insulate itself from liability are certainly buried in the 25 pages of the Terms of Use, which is as previously stated not clear that by creating an account on the site and not renting a boat yet that somewhere in these 25 pages there would be a release of all liability for a boat rental that had not even occurred yet." *Id.* at 14. He argues that "[t]here are ambiguities in this contract because there are three separate release sections which all say different things, creating both ambiguity and conflict, and because the language is buried throughout the document among other verbiage, and is not clear." *Id.* at 14–15. Claimant also asserts that a "layperson, like Lindsey Partridge, would not be expected to find this conflicting language buried in 25 pages and understand GMS's intended legal ramifications. All waivers or releases contained in the Terms of

18

Use should be held to be invalid because of the ambiguity and conflicting sections within the document." *Id.* at 15.

In GMB's reply, GMB simply does not directly respond to Claimant's arguments about the problematic language in the Terms of Use Agreement whatsoever. Even if summary judgment on this contractual indemnification issue were allowable here, which the Court does not believe it is, the Court cannot grant summary judgment in GMB's favor regarding defense fees and costs given the issues raised in the response and not responded to in the reply. Therefore, the Court will simply deny GMB's Motion on the issue of contractual entitlement to legal fees and costs, and once again note that the contractual issues other than fees and costs are moot in light of the fact that the Court has found that summary judgment as to GMB's liability on both counts of Partridge's crossclaim shall be entered in GMB's favor.

The Court encourages GMB and Claimant Partridge to confer on this issue and try to reach a resolution. To the extent Claimant and GMB can or cannot reach a resolution, they shall file a Joint Notice on or before **February 21, 2024**, stating their respective positions as to how they wish to proceed on this indemnity issue and whether GMB even has the right to proceed on this remaining indemnity issue against Claimant Partridge.

## V.     CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Cross-Defendant Defendant Get My Boat, Inc.'s Motion for Summary Judgment Against Donald S. Partridge, as Administrator of the Estate of Lindsey Partridge [DE 52] is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted in favor of GMB and against Claimant Partridge as to both counts of the crossclaim filed by Claimant Partridge against GMB. The Motion is denied to the extent GMB moves for summary judgment on the issue of whether Claimant

Partridge is contractually required to indemnify and defend GMB for its attorneys' fees and costs incurred in this case.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of February, 2024.

                                                         WILLIAM MATTHEWMAN
                                                         United States Magistrate Judge